All rise. The United States Court of Appeals for the Fifth Circuit Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to the law, that of the United States and its Honorable Court. Please be seated. Well, another example that we live in times where you have to be flexible. I'm not authorized under federal law to be presiding today, but I'm going to do my best. I can't tell what's on the TV screen, but I hope Judge Elrod is there. Can you hear us all right, Judge Elrod? I can hear you just fine, Judge Stoutfick. Thank you so much for doing the honors. Oh, my pleasure, my pleasure. We had two cases for today, but the usual reason, we had to postpone one of them at the last moment. So the one case we will hear is Valentine Figo, and you can correct me later at all, v. Settlement Class Cnsl. Mr. Rowan. Thank you. Good afternoon.  My name is Ed Rowan, and I represent Appellants Kim Frago and Fred Nolte in this appeal regarding the Chinese drywall case, specifically the Taishan drywall. The Fragos and the Noltes have been damaged by receiving only 5% of the value of their total claim in this case instead of 20% or 100%, which we allege should have been the case of their award. There are two things I want to focus on, Your Honors, and that is first, whether the PSC owes a fiduciary duty to both the individual claimant as well as the individual counsel that represents that claimant. And the second is whether Rule 60B of the Federal Rules of Civil Procedure will provide relief as requested in our brief, that being inclusion in either the Brooke complaint or the... Counsel, you know better than any of us all the procedural difficulties that have got us here. From my perspective in looking at all that's happened, the events are very unfortunate for your clients. I'm not sure you are properly here, though, both because of no right to appeal under the settlement agreement beyond the district court, plus it doesn't seem to me that there is any actual controversy with the group of people who purportedly are the appellees. Why don't you deal with both of those? Well, first, who is the controversy with? Who is the controversy with in this case as opposed to any fiduciary duty that could be brought in any separate action? What we have is a claim under the settlement agreement and how it was handled. Right. So how do we get that group of people, those lawyers, as the other side? Right. So when Judge Fallon, when he signed the order on January 10, 2020, he said that the money has already been paid in by Tijan and that essentially they're no longer a court. He said that they have... The money has been paid into a settlement fund and now you're just distributing it. They have no interest in the distribution. Right. So the error and the mutual mistake that I claim in our case is error that happened with somewhat both myself, Your Honor, but really a miscommunication and an outright error on several occasions. Okay. We got that background. So I know you're leading up to it. How does it deal with the two problems I identified? Well, I mean, this is... It's not your typical final judgment like in a law... You could finish that sentence a lot of ways. This is not your typical much of anything. ...jury trial, that sort of thing, but there is no recourse that is left for my client. She was... I mean, sometimes that happens. How do you get in... Tell me about the start. I gave you two. Let me just give you one. Tell me about the limitation on appeal under the settlement agreement beyond the district court. Well, there is precedent for the courts extending 60B even in a class action settlement to extend the deadlines. I cited the Sundant Corporation case, and in that case it said that the judge, in its discretion, had the right after the settlement was in place and dates were set, if there was an expiration of a date, that the judge had the equitable right to extend that date when the... Well, so maybe the district court did, but I think Judge Southwick's question is whatever the district court decided, how can you appeal it, given the language waiving the right to appeal past the district court, an allocation amount determination? Right. I believe the contemplation of the settlement itself was you don't want people inundating the Fifth Circuit when they're saying, hey, I didn't get enough. I think that my house is... Like the BP cases where we were getting tons of those, right? I think, yeah, my house is 3,500 square feet, and they're saying it's only 3,200 square feet, so I want my extra $5,000. I think your briefing refers to, and maybe the other side did, maybe not the other side, the amicus did, if that's what they want to call themselves, to the BP situation, but that was part of the settlement agreement. The settlement agreement created this unorthodox, and some have questioned it, procedure for how to deal with these administrative claims. That's not in your agreement, and that, to me, is an enormous hurdle that I'm still not hearing how you overcome it. Well, I'm not sure what the answer is. This is a very troubling case. Why don't you proceed to the next thing you want to cover, but be aware that that is looming very large on your claim. Yes, sir. Can I keep addressing that a little bit? Please. I tried to get you to address it, and I sort of surrendered, and Judge Costa got you back on it, but you've got something to say directly in response to that. Please. Yeah, I think, you know, first, we need to go to- I guess I'll ask directly my concern. How are you not appealing an amount determination? Because I am not. I'm not objecting to the parameters of what the settlement does. It has an allocation formula. I'm objecting to my status as an absent class member because we did everything that was required of us to be in either the Brooke complaint or the Amoran complaint. We were told that our claims were secure. We informed the PSC that we thought we were on the wrong complaint. We were on no Taishan list whatsoever after five or six communications with the PSC that we both had Taishan Chinese drywall and or that we believe we've been left off a complaint. It was, you know, if the PSC does have a fiduciary duty, I would have been fine to file a complaint and intervention myself, but it was the PSC that informed claimants' counsel, and this is all in the record, that they're the ones that file the interventions, not us. We just provide them with the information. So before we ever got to when the settlement was finalized, not until January 10th of 2020, and before we ever got there is where the problem lies. You know, so that's before the terms of the settlement were in place is that we should have been put in that complaint, but we were assured that we were protected, so we did as we were told. Let's say someone used the wrong square footage. They got the wrong blueprints of a house in making the calculation because square footage affects the amount, right? Yes, sir. Would that be appealable? No, sir. Why not? Because that is a determination of the settlement itself, okay? So if you want to appeal what your square footage is, then you can do that in the trial court. You can submit whatever documents you have submitted that support that and appeal within that, but there's no vehicle within the settlement to appeal what happened here, and Rule 60B can be applied for these situations and class actions and MDL settlements and that sort of thing, and there's no doubt that there is a devastating injury to these two people that now can't repair their house. All the drywall has to be taken out of the house. They can't afford to do that now because now they're getting $5,000 or $10,000 instead of $40,000, $50,000, or 100% it would be. Well, Counselor, it's consistent with what Judge Costa just said. It seems to me, thinking of it in terms of the incredible amount of work necessary for the Deepwater Horizon set of claims, here you're talking about a very significant mistake that in a meaningful way affected what your clients received. More than one situation contributed to it, but it seems to me it is in the nature of a mistake in how the claim was presented. It's in the same category as Judge Costa's example or any one of a number of other things, and I don't know what's in the settlement agreement beyond this, but I assume there are mechanisms to try to correct such things along the way to make amended claims and otherwise to adjust, and a lot of opportunity, maybe not a lot, some opportunities came along to make those adjustments and they were mistakes that just kept magnifying. It seems to me this is exactly the kind of thing, I mean respond, is it this exactly the kind of thing that the limitation on appeals or the allocation amount was contemplating, that mistakes and how you reach the allocation amount at some stage cannot be corrected? Well, this is a very unique situation. I mean, if you go back... I wonder, I mean, how many clients did you have with claims? Well, with the Tejan I had four clients, but with NOLF I had maybe 200. It seems to me that very much in that sort of significant set of claimants, these sorts of mistakes are more likely, and to say that when you have these multiple claimants being handled by a single or a few number of lawyers, these sort of mixing up the claimants is not unheard of, I would imagine. Maybe I haven't heard of it. It's not unlikely. So it seems to me that this limitation on appeal would contemplate these sorts of mistakes. Well, if you look at what happened here, and the email correspondence is pretty telling in this case. I mean, for instance, in June 2015, when I emailed with the Plaintiff's Liaison Council and I said, hey, these two folks of mine, Fuego and Nolte, are on Omnia Complaint 18, and I would assume that she knows that that is a NOLF complaint. And I said, is there anything else that we need to do? And she says, you're protected. There's nothing more that you need to do. And I don't know what else I can do but rely on that. When I say this is unique, I've read as many Chinese drywall documents as I would like to ever read in my life again, and I can't come up. I wanted to find another set of facts that was similar to this and see how the court treated it or anything. In motion practice, I couldn't find anything. You know, Mr. Herman might know, but he didn't cite anything like that in his brief. But this is a very unique situation, and here the mistake occurred not just with claimants and claimants' counsel, but also with the PSC. So the folks that were administering the settlement and in charge of this made a mistake, and this was admitted in three different places in Mr. Herman's brief. I appreciate his honesty. He can't explain how these folks got on with being complained. He can't explain. Well, there are thousands of claims. That's how things like this happen. Just how do you correct them? Would you identify, compare or contrast for me two of the players, the Plaintiff's Steering Committee and the Settlement Class Counsel? What's the relationship? That's a good question. At the very beginning of MDL, I believe there is the Plaintiff's Steering Committee. There was no Class Counsel at that time. And then once a settlement proposal is filed in the form of a class action vehicle, then that becomes Class Counsel for that. I will rightly defer to Mr. Herman on that. He's an expert on that. But that's my understanding. But for the purposes of this. What about the Steering Committee also? Steering Committee versus Class Counsel. They're essentially one and the same. I think they have overlapping duties. Once when a settlement happens, and a lot of these MDLs that I have been involved with, they administer the settlement through the vehicle of a class action. And that brings inclusion of all the people into the settlement or they opt out of the settlement. And that's where Class Counsel sort of, I don't know if he branches off, but he kind of runs concurrently with the PSC in their duties. But it's one and the same. The communication as far as what we were supposed to do with Class Counsel, Class Counsel has filed this brief. The communications were with the Planning and Steering Committee. And we provided all the documentation that we were supposed to provide. And we were given assurances. And yet here they are devastated by their house. And Rule 60B has been applied in class actions to correct these very errors. I'm sorry, but wasn't it counsel that made the representation that they were not in the annulment or the book, that they were in the NAF instead? Yeah. So this is one of the – thank you, Your Honor, for that, Judge Elrod. This is one of those – my time is up. No, you may answer the question. Okay. Well, to answer that quickly, that was in 2017, where I again emailed the PSC saying, these folks are on this BEAN complaint and they're TAJON. Why are they on the BEAN complaint? And then taking a step back, I'm looking at it. I got, I'm going to call it sort of a terse response that if they're on the BEAN complaint, they're not in the class. And so I thought what was being communicated to me was that those were NAF clients. They were telling me, no, you're wrong. Those are NAF clients. And that's when I said, okay, sorry, I got my wires crossed. You know, I didn't know this, but that was a first-year associate that was making those calls. And I don't think it was right for that to happen. If you look at it, you know, who replied to that email? I didn't know it at the time. I assume they knew what they were doing. All right, Counsel. Okay. Good afternoon, Your Honor. Steve Harmon for Settlement Class Counsel. I guess I'll just start by asking what would be most helpful for me to address. Well, one thing you can tell me, are you the appellee here? Well, I can tell you this. I was co-lead counsel in the BP oil spill litigation. And so as has been alluded to, it was our intent to spare ourselves and to spare this court from what happened with the BP settlement. As you may recall, after the BP settlement with BP, in the Deepwater Horizon there was a second settlement, which was very, very similar to this settlement that was reached with Transocean and Halliburton. Closed fund, and we tried to do a better job of saying you couldn't, that Judge Barbier's word was final. It was final pretty much anyway. It was. In that appeal, interestingly enough, those claimants who were dissatisfied with Judge Barbier's final decision identified Transocean and Halliburton as the appellees. Transocean and Halliburton weren't happy with that because they didn't have a dog in the fight. So we said, okay, we'll try to substitute ourselves and we'll handle the appeal because that seems fair in our responsibility as class counsel. The Fifth Circuit did not agree with that approach and kind of fussed at me a little bit for even trying to substitute myself as an appellee. So I was a little bit surprised. In this case, when we were designated the appellee, I assumed that Tatian would be the appellee. Well, that's what I'm confused about. I mean, in all those BP, the hundreds of appeals from the original settlement, what's the difference here? Was that extra money coming out of BP's pocket as opposed to a closed fund, or is there a difference here? Because BP is the defendant in all those, and they fight hard against anyone getting any more money out of the settlement. Structurally, it was very different because it was unlimited. It was uncapped. So BP did have an interest in the appeal. Secondly, the language that we used, we hopefully picked up on the cues when the BP was allowed to appeal their decisions and maybe did a better job in these subsequent two appeals. It makes a big difference for us, though, however, in terms of our fiduciary duty. And we do, as class counsel, have a fiduciary duty to the class, definitely to the class as a whole, and to some extent to individual class members. However, when you have a closed fund as opposed to an uncapped settlement, the class members have a conflict with each other. There's some suggestion that I should be advocating here for the appellants. The problem is if I do that, whatever money you award the appellants is taken out of the pocket of the other 4,000 class members. So what the Supreme Court indicates in AMCM is, at that point, class counsel should step out of the case and allow it to be taken over by neutrals, and that's what we did both in the Halliburton settlement and here. We had a court-appointed neutral. He developed the allocation formula. We had a court-appointed claims administrator who determined all of these things, like whether you were Amerenbrook or absent. And that takes us out of the uncomfortable position of having to say, these class members should get more than these class members. Should that administrator be the defendant here? In my opinion, yes. I will tell you that, based on my recollection in the Halliburton transocean situation,  or to be substituted, like he would along with us, because we didn't know who the standing was. And I think the claims administrator ultimately did appear either as an intervener appellee or as amicus in that case. I thought it was an intervener. It's not an intervener? That may be correct, Your Honor. I think that's probably correct. But, of course, it was our intent in both settlements not to have these appeals. Well, Counselor, you're not really adverse, are you, to the appellant in this case? No, we're not adverse at all. You call yourself an amicus. You search for other labels. There's not a good label for it, but it's not an adverse party. I agree. Well, I'm wondering, do you have anything to say about the allegations that I, I hate to pick on this unknown first-year lawyer, but that a lawyer gave improper information? Are you responsible for that in any way? I just want to test this argument. Sure, Your Honor. So when you talk about the fiduciary duties or other duties, you have to break it down into two parts, as I think you were alluding to before. First, you have a PSC. And when you're talking about the 2012 to 2017 time period, at that point in time, you have lawyers, the PSC, who were appointed by the court to act for individuals in the MDL, whom they don't represent, either with a class certification or otherwise. They have their own counsel. And there is uncertainty in the law, let's put it that way, about the duties that are owed. I have opined that we do owe a fiduciary duty under those circumstances, that the PSC does owe a fiduciary duty even to individuals that they don't represent. However, usually what we're doing for those individuals are common collective tasks that we're appointed to by the court, administrative matters, proving liability, proving general causation, establishing personal jurisdiction. When it comes to individuals having to prove their own case, specific causation, their own individual damages, they're relying on their own individually hired counsel for that. In the ordinary MDL, I don't think the PSC would ever be responsible for filing complaints. That is something that individuals and their counsel do. In fact, before the complaints filed, they're not in the MDL. So even if we have a fiduciary duty to people in the MDL, if there's no complaint, it's not in the MDL, then they're not in the MDL. Well, do you agree factually that the steering committee filed the initial claim intervention with the wrong complaint? Yes. And so where does that take us? I mean, you're talking about when the fiduciary duty applies and if there were one, just where does that take us after all that's happened? Okay. So for that question, then the timeline becomes very important because the claim first came to the PSC. It actually didn't come to the PSC first, I don't think. I think it went to the NOF settlement program, which is probably part of the confusion. Maybe more than I need to know, but keep going. The important thing is the date. So the date here, by all accounts, by the record, by the appellant's briefing, is I think it's June, it may be July, but it's sometime in the middle of 2013. At this point in time, remember this litigation started back in 2009, so we're four years in. At this point in time, the PSC wasn't filing any Tashon omnibus complaints. The last Tashon omnibus complaint, according to everything we can figure out and recall, where we added Ameren plaintiffs was in November of 2012. And the distinction is important because in the beginning, Tashon, we'll just call him Tashon, they weren't defending the case, so all these default judgments were taken. But at some point, Tashon came into the case, started defending on personal jurisdiction grounds, tried to overrule the defaults, and ultimately, in September of 2012, Judge Fallon found that there was personal jurisdiction, and that went up to this honorable court on appeal. The entire year of 2013, and for a lot of 2014, there was no Tashon case in the district court. It was before this court on appeal. There were no additional plaintiffs who couldn't take advantage of the default judgments because at this point, we had Tashon defending the case, so it probably wouldn't have been appropriate to be adding plaintiffs to the Ameren complaint at that time. So the PSC, when we got filings, weren't thinking, oh, we need to add these to the omnibus complaint because we weren't doing that at this point in time. Same thing happened with their filings in 2014. The first time that they ever came to us in these emails and said, hey, can you please put us on an omnibus complaint against Tashon or make sure that we are, was in 2015. And at that time, if we had, and those communications were admittedly unclear. You could blame everybody for that. But if the PSC had added appellants to an omnibus complaint at that time, it would have been a Brooke complaint, not with the benefit of the default judgment because they were too late. So it's not just that it was on appeal 13-14 whenever it was too late, period? It was too late for Ameren. The reason why Ameren got paid at 100% and Brooke got paid at only 20% is the Ameren plaintiffs who had filed suit very early in the litigation got the benefit of the default judgments. The Brooke plaintiffs are all the people that came along later who didn't get the benefit of the default, against whom there were more statute of limitations, defenses, et cetera. And so the neutral explains why it was so heavily discounted. But I think for the court's purposes, at the end of the day, this probably really isn't a question between are they absent or Brooke or Ameren. They're really only absent or Brooke. They couldn't have been Ameren. When Judge Fallin comes in late in the day, and so far as it seems to me what's relevant here, taking at face value what your friend on the other side is saying, very significant effect of some mistakes early on are going to prevent some claimants who would fit within the settlement program of getting a substantial amount of money. Instead, they're going to get very little money. What authority did Judge Fallin have when this issue was first presented to him? And we can measure then how he exercised authority, if any. And when did he lose any authority to sort of deal with what the appellant wanted him to deal with? Well, when this was first presented to him, could he have in 2020, in that June 2020 order, whatever it is, could he have given the relief? Would he have had the authority on the settlement agreement to make the kind of dramatic change in the claim that appellant was seeking? Well, in a de facto sense, he probably did. I mean, the question is whether he should have, I think. And this goes back to something you were asking appellant's counsel. So this was the process that was intended and set forth in the settlement agreement. We had a master spreadsheet that was filed on the record. And so the intent was that people like appellant's counsel would go to the master spreadsheet, realize, hey, I've got these three clients that aren't in the master spreadsheet. I've got to complain about that. I'm going to go to not class counsel, the claims administrator and say, claims administrator, I should have been treated as, I would say, Brooke, but they would probably argue we should have been treated as Amarin. The PSC messed up, et cetera, et cetera, et cetera. Would have been up to, and frankly, let me point out that 106 or 109 people did just that. They may not have complained about Brooke versus Amarin, although I think there were a couple plaintiffs that did and were included. But most of them were complaining about square footage or other things. Please don't lose your train of thought. As I was talking to appellant's counsel, it does seem to me, and this isn't as large a BP, I wouldn't think, but still an enormous number of claimants here that a fair number of mistakes were made and had to be dealt with. Right, and so that's why we said, look, here's the information. If anybody has a problem with it, speak now. And 106 or 109 people spoke, and the claims administrator did what he believed was correct, and then that went to Judge Fallon. The appellant's counsel never did that. He waited until he didn't do anything about it. You may be building up to it, but that's basically my point. If all the rest of this has not been done quite in the way that you set out, what power, authority under the settlement agreement or otherwise would Judge Fallon have had when this was presented to him? Because he can deal with the allocation of harm or the damage amount or damage allocation. I think if he were being faithful to the settlement agreement, he would have applied the objective factors and said, objectively, it doesn't matter what could have, should have, would have been, objectively, these people were not Brooke or Ammerman. However, knowing Judge Fallon, and as a practical matter, it's his decision. I think he probably would have if he felt that they were authorized, that it was unfair. I think he would have made it fair. But I think his problem was that in addition to, irrespective of what the PSC did or didn't do, and irrespective of what happened during the settlement process, it's undisputed that appellant's counsel knew in 2017 that his clients hadn't been added to a Brooke complaint, and there were, I think, seven amendments that they could have been added to after that if he had just looked on PACER and seen what the complaint said or done anything or pressed the issue. And so I don't think, even with respect to the first appeal, Judge Fallon kind of let it go. They were supposed to file something with the court. They made a mistake and filed it with the claims administrator instead. And Judge Fallon said, well, you know, I'm going to let that go. But he just wasn't willing to let this go because it was too big of a mistake. I think on appellant's counsel part, you could say the PSC contributed to it. But the other thing is, from a Rule 5960 appealability perspective, appellant's counsel suggested that out of nowhere in this order in June of 2020, Judge Fallon designated these people as absent class counsel. He filed claims for them as absent class members. He knew they were absent class members from the very beginning. He submitted their claims for them as absent class members. So they were always absent class members. They could have opted out of the settlement. They could have said, look, you know, we think it's a raw deal. We don't like the fact that we were left off these complaints. We should have been put on Brooke or whatever. We weren't. But now that we know we're only getting 5%, we're just going to opt out of the settlement and continue to litigate. They didn't do that. Well, I think I know how the plaintiff would answer this, and certainly he can claim it. What do you say is the right answer in this case on this deal? Oh, then you win, of course. Excuse me, I misspoke.  Just as a matter of equity. As a matter of equity, you know, if they got the Brooke amount, that's probably the right answer. Should that happen legally, I leave to your discretion. But, you know, what's fair? I think they should have been treated, whether it's our fault, appellant's counsel fault, some combination thereof, they should have been treated as Brooke claimants. And so I think that's the right answer. We didn't have authority to do that because it wasn't our money, but that's my answer. All right, counsel. Anything else that I can help with? Thank you, counsel. Thank you very much. And thank you, by the way, for picking up the baton and running with it. No problem. Your Honor, what I'm asking the court to do is, you know, to procedurally use the vehicle of 60B, you know, to correct a mistake that has been put to light and take us back to October of 2019. Because in October of 2019 is sort of, you know, when the cat hit the fan. And I realized that, you know, the settlement is going down. It hadn't been approved yet, preliminary approval. These folks aren't on the complaint. What do I need to do? So I reached out to plaintiff's liaison counsel and asked them, told them the situation. This was on October 25th, 2019. There's an email that's cited and quoted. And I told them exactly what was going on. And then I was told that the only thing that I can do is file an absent class member claim. And so I relied on their statement to me, and I took that appropriate action. She didn't tell me that six days after that email, Jacob Woody, the claims administrator, reported to the court in open court and filed a master spreadsheet that was amended. And the master spreadsheet was amended for any, what the words say, for any errors or mistakes. And so the way I read that is the master spreadsheet could have been amended to put us in as a Brooke plaintiff. Also, because Brooke had not yet been approved yet by the court, I could still file a complaint intervention in Brooke at that time. So what I would have done was I would have, you know, went up to the top of the tallest building in New Orleans and the courthouse or whatever, and I would have filed a complaint intervention. I would have sat in Mr. Woody's conference room or reception area and tried to see if he could address the situation. You know, I could have opted out. I lost that ability because I was told, and I relied upon the fiduciary relationship that I thought we had with the PSC saying there's nothing you can do. You're out of luck. And so that's where the mistake happened. And I want to, I don't know if this is proper or not, but it's in the designated record, okay, but I didn't cite it in my brief. Is it okay to refer to something? Let's hear from it. So in that, Judge Fallin held a bunch of status conferences, and October 31st status conference, it's ROA 25656. Jacob Woody talks about these 109 folks that have objected, and he says mainly people who want to get in on the Brooke complaint or the Amoran complaint is what he says. And then I quote from here, he says, it should be fairly black and white, close quote, to deal with that. And so I don't know, that's all the conversation that happened there. I don't know exactly what happened, but that was six days before I, from a legal standpoint, was freaking out for my clients and trying to figure out what to do. I don't think the claims administrator would be a part of here because, in all honesty, your honors, I can't cite anything that Mr. Woody did or didn't do. I communicated with the PSC. Now, I don't know what responsibility he had about putting my folks on the Bean complaint, but I didn't communicate with Mr. Woody, and he didn't fail to do anything or give me any wrong information. And you asked about Judge Fowle and when did he lose authority to provide relief. Well, in all of the cases where there is some type of an objection or an appeal, he asked class counsel to give their opinion on what should be done, and, unfortunately, class counsel said what, basically, the judge ended up saying in his order, that too little too late, that you can't appeal this within the settlement. So that's exactly what Judge Fowle did. But I think at that time Rule 60B does have the authority to remove a judgment and to correct a mistake. All right, counsel. Thank you. Thank you. I will say if this were a bar exam question, it would be an unfair question, but we'll have to come up with an answer. Thank you both. We are in recess.